ANDREW E. COLE, *vs.* DAVIS AUTOMOBILE COMPANY.

JULY 8, 1909.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Master and Servant.   Vice-principal.   Fellow-servant.*

A., a plumber, was employed by B., the foreman of defendant, to repair water-coolers.   On the day of the accident, B. brought to A. a gasoline tank to be repaired, A. presuming it was a water tank.   B. insisted upon the tank being repaired within a short time, in spite of the objections of A. that it could not be done in such time.   While A. was preparing to work upon the tank, the fumes ignited from a forge near which the tank had been placed by B.:—

*Held,* that the proximate cause of A.'s injuries was his obedience to the command of B., his foreman, to work upon the tank made dangerous by the careless act of B.

*Held,* further, that, even if B. was a fellow-servant of A., while placing the tank near the forge, yet when he determined that the repairs must be done and ordered A. to do the work, such act was that of a master, and B. acted as vice-principal, and in so acting he knew, or might with ordinary care have known, that the tank contained gasoline, and that, from its proximity to the forge, an explosion might result, and it became his duty to warn A. of the danger.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of plaintiff, and sustained.   Blodgett J., dissenting.

DUBOIS, C. J.   This is an action of trespass on the case for negligence, brought by the plaintiff to recover damages for personal injuries sustained by him, in June or July, 1906, through the explosion of a gasoline tank caused by the ignition of the gasoline fumes therefrom by the flames of a lighted gas forge near which the tank had been placed by Warren Ballou, superintendent or foreman of the defendant corporation, who had complete control of the repair shop, a separate department of the defendant's business.   The explosion, which bulged out the sides of and blew one end out of the tank, occurred immediately after the plaintiff had placed his left knee against the same, a cylinder about two feet in length by about a foot in diameter, and which was lying across a bench which was from twenty-six to twenty-eight inches wide, for the purpose of scraping around

the rivets to make a clean surface for the application of solder in the repairs which he had been ordered to make by Mr. Ballou, the foreman.

Upon trial in the Superior Court the plaintiff was nonsuited, upon the ground that the job was "an ordinary repair job, . . . and that the negligence, assuming there was negligence of the foreman, the boss, was the negligence of a fellow-servant."

To this ruling the plaintiff excepted, and the case is before this court upon the plaintiff's bill of exceptions based thereon.

It appears that the plaintiff, a master plumber, was employed, by said Ballou, for the defendant corporation, about March, 1906, to repair automobile water coolers, and that during his said employment he repaired a water cooler and tank combined, water coolers, headlights, and copper tubes, but that he was not employed to, and had never been asked to, repair gasoline tanks, and he testified: "If I had any idea that it was a gasoline tank I would not have stayed there even to converse with Mr. Ballou. I regard my life more than a gasoline tank." He further testified that the tank which exploded resembled in size and shape the water tank that he first repaired. In answer to a question, on cross-examination, as to how the said accident happened, the plaintiff testified: "I stated that Mr. Ballou brought in this tank, I presumed it was a water tank, and laid it aside the forge, and we conversed over repairing it. He said,—he stated that the tank had to go out within an hour or thereabouts, and I stated that it would be impossible to make it,—repair it, in that given time, that the tank had to be taken apart and reinforced on the inside, soldered on the inside. After that he stated it had to go and had to give a demonstration. I stated it was impossible. Mr. Ballou,—he says, 'it has got to be,' and took up the tank and laid it on my bench within four or five inches of this burning gas forge, and walked out;" and further, in answer to the question: "You hadn't started to do anything on it at all? Ans. No, sir; I just simply laid down a piece of the lamp I was repairing, and I put my knee up like this (indicates) to brace the tank while I worked on it, and just picked up my knife to make some scratches around some rivets to clean up the metal so as to make the metallic edges join to-

gether when the explosion took place. . . . Q It never occurred to you it might be a gasoline tank at all? Ans. It didn't. I was very busy. I was the man to make the repair. Q. There was sufficient gasoline, you say, to cause an explosion? Ans. Yes, sir; a teaspoonful in there would cause an explosion. Q. If there was a teaspoonful in there, and it caused an explosion, would it indicate it was there to any of your senses? Ans. Indicate that the gas or gasoline was in the tank? Q. Yes. Ans. Nothing that I knew; I knew of no gasoline being in the tank. Q. Did you ever smell gasoline? Ans. The shop was full of the odor. Q. That machine shop over there is so full of gasoline that you could not distinguish anything? Ans. I could not. Q. Is that your testimony? Ans. It was so full in my system, being accustomed to smelling that odor, I could not detect anything as readily as a man coming from the outside could detect the fumes, which were so strong, from the explosion in the cylinders to even hurt your eyes. I called that to Mr. Ballou, how it smarted my eyes there at times."

(1)     To determine whether or not the negligence complained of is the act of a fellow-servant it is necessary to consider what was the proximate cause of the accident which resulted in the plaintiff's injuries. The plaintiff claims injury to his left knee, left arm, and scrotum, and that he received the injuries from the explosion of the gasoline tank, lying across the work bench, at a time when he was standing at the bench, with his left knee against one end of the tank, and his left hand upon it, while he had hold of the knife with his right hand for the purpose of scraping the tank as required. If the plaintiff had not been near the tank when it exploded, he would not have been hurt. If he had not been in front of the same in the position that he had assumed, he would not have been injured in the manner that he was. He claims that his attitude was necessary for the proper performance of the work. The fact that he had been ordered to perform this work is undisputed. The order was peremptory: "It has got to be." The necessity for such repairs was urgent, if not emergent. All other work had to be suspended for this purpose. The proximate cause of the plaintiff's injury was his

obedience to the command of his foreman to work upon the tank made dangerous by the careless act of such foreman. Even if the foreman was a fellow-servant of the plaintiff while placing the tank containing gasoline near the flames of the gas forge, because such act was the act of a servant rather than that of a master; yet when he, Warren Ballou, discussed the possibility of the repairs being accomplished within the time that he required the tank for use in the demonstration of an automobile, and when, notwithstanding the objections of the plaintiff that it was impossible to make the repairs within the time limited, he determined that it must be done, and ordered the plaintiff to do it, such act was that of a master. In so acting as master he acted with the knowledge that the tank was a gasoline tank, and he knew, or by the exercise of ordinary care he might have known, that it contained gasoline; he knew, if it contained gasoline on that day in June or July, if there were openings in the tank, that gas was liable to form, and the same was likely to escape from the tank, and that if such a tank in that condition was placed near a lighted gas forge, the fumes from the tank might ignite and an explosion result therefrom. Having this knowledge, or means of knowledge, his duty in the premises was to inform the plaintiff of the dangerous condition of the tank or to abstain from ordering him to repair the same until it had been rendered innocuous. But instead of performing this duty, he required the plaintiff to leave off all other work and forthwith give to this his undivided attention. In so doing he was acting as vice-principal.

The nonsuit was therefore improperly granted.

The plaintiff's exception is sustained, and the case is remitted to the Superior Court for a new trial.

BLODGETT, J., dissenting. At the trial of this action of the case for negligence the plaintiff was nonsuited and assigns such nonsuit as error.

The record discloses that the plaintiff was employed in the repair shop of the defendant and was under the immediate direction of one Ballou. On the day of the accident Ballou brought to the plaintiff's work bench a gasoline tank from a

certain automobile and placed it thereon, within a short distance of a lighted gas forge, and requested plaintiff to make some repairs thereon, by soldering the same, before a certain time. Unknown to the plaintiff and to Ballou, there was a slight quantity of gasoline in the tank, and the fumes from it ignited while the plaintiff was at work upon the tank, and the resulting explosion caused the injury for which the plaintiff seeks to hold the defendant corporation liable, claiming that Ballou was a vice-principal of the defendant.

The trial justice held that the case was governed by the decisions of this court in *Milhench* v. *E. Jenckes Mfg. Co.*, 24 R. I. 131, where this court held (p. 133) as follows: "If he intends to rely upon the fact that his injury was caused by reason of the negligence of a vice-principal, he must clearly fail; because, under the well-settled law of this State, it is the character of the act, and not the rank of the person performing it, which is the test of vice-principalship. *Hanna* v. *Granger*, 18 R. I. 507; *Morgridge* v. *Telegraph Co.*, 20 R. I. 386."

The trial justice, in granting the nonsuit, said: "This was not a fixture, or permanently attached to the structure, but simply an ordinary repair job; and it seems to me that the negligence, assuming there was negligence, of the foreman, the boss, was the negligence of a fellow-servant."

I am of the opinion that the plaintiff's exception should be overruled. The evidence shows no lack of repair in any of the fixtures or appurtenances of the shop, and no unsafe conditions there, for either of which the defendant corporation could be held responsible. The accident seems to have resulted from the act of Ballou in personally placing the tank, which he knew to be a gasoline tank, but which the plaintiff avers he supposed was a water tank, in dangerous proximity to the lighted forge, without first assuring himself that there was no gasoline in the tank which might cause an explosion. Whatever the liability may be of Ballou, I am unable to agree that the defendant corporation is liable because of his act. As said by this court in *Larich* v. *Moies*, 18 R. I. 513, 514: "The manner of proceeding with the work was committed to a foreman or 'boss,' and this involved the exercise of such discretion and judgment as be-

longs to a co-worker in a superior grade.   No duty of a master was omitted or violated, but the negligence, if there was negligence, was purely that of a fellow-servant, for which the plaintiff cannot recover against the principal."   Here there is shown no neglect in the selection of suitable appliances, and the declaration contains no count even charging the employment of unskilled or incompetent servants.

*A. B. Crafts* and *A. A. Capotosto,* for plaintiff.

*Harry J. Williams, Thomas A. Carroll,* and *Walter P. Suesman,* for defendant.